# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 30, 2017

Lyle W. Cayce
Clerk

No. 16-50905
Summary Calendar

ARMANDO ARMENDARIZ; YVETTE ARMENDARIZ; HECTOR ARMENDARIZ,

Plaintiffs - Appellants Cross-Appellees

v.

DAVID CHOWAIKI; HILEL CHOWAIKI; DHC REALTY, L.L.C.; CHOWAIKI HOLDINGS, L.L.C.; EL PASO DHC ENTERPRISES, L.L.C.; EL PASO DHC ENTEREPRISES FAR EAST, L.L.C.; EL PASO DHC ENTERPRISES WEST, L.L.C.; DHC GENPAR, L.L.C.; DHC RALNER, L.L.C.; LEON ERNEST GLUCK; GENECO, L.L.C.; COREY HAUGLAND; JAMES & HAUGLAND, P.C.; ABRAHAM CHOWAIKI; NADIA NAHMAD,

Defendants - Appellees Cross-Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 3:14-CV-451

Before STEWART, Chief Judge, and JOLLY and JONES, Circuit Judges.

PER CURIAM:*

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50905

Plaintiffs-Appellants Armando, Yvette, and Hector Armendariz brought federal civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c)–(d) ("RICO") and various state law claims against Defendants-Appellees David Chowaiki; Hilel Chowaiki; Abraham Chowaiki; Leon Ernest Gluck; Corey Haugland; Nadia Nahmad; Geneco, LLC ("Geneco"); DHC Realty, LLC ("DHC Realty"); Chowaiki Holdings, LLC ("Chowaiki Holdings"); El Paso DHC Enterprises, LLC ("DHC East"); El Paso DHC Enterprises Far East, LLC ("DHC Far East"); El Paso DHC Enterprises West, LLC ("DHC West"); DHC Genpar, LLC ("DHC Genpar"); DHC Ralner, LLC ("DHC Ralner"); and James & Haugland, P.C.[1] arising out of an allegedly fraudulent adversary proceeding before the U.S. Bankruptcy Court for the Western District of Texas. Appellees filed a motion to dismiss the case, which the U.S. District Court for the Western District of Texas granted. Appellees then filed a Rule 11 motion for sanctions, which the district court denied via text order. For the reasons that follow, we AFFIRM the district court's dismissal of the case and REVERSE and REMAND the district court's denial of Appellees' motion for sanctions.

## I.    BACKGROUND[2]

David and Hilel Chowaiki own three Fuddruckers restaurants, operating as DHC East, DHC Far East, and DHC West. The brothers also own DHC Realty, Chowaiki Holdings, DHC Genpar, and DHC Ralner. Armando, Hector, and Yvette Armendariz all worked for the Fuddruckers restaurants in various capacities.

---

[1] As the district court noted, the Armendarizes never served DHC Genpar and DHC Ralner. Accordingly, we affirm the district court's dismissal as to these defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (quoting *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967)).

[2] The following facts are presumed true and are stated in the light most favorable to Plaintiffs-Appellants. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

No. 16-50905

In 2010, sales at the three franchises began to decline, and David and Hilel approached Armando about their financial situation. Armando "offered to lend" David and Hilel $50,000, despite noticing that "during the entire time of [his] employment," from 2006 to 2012, the restaurants were not producing accurate profit and loss statements, "much of the revenue and profit . . . was being siphoned off" to "pay[] for many of the cost[s] and expenses of" Chowaiki Holdings, and the restaurants "did not report any of the sales [from the restaurants' catering businesses]." Later that year, David and Hilel again came to Armando about their financial problems, and Armando loaned them an additional $50,000. A year later, in 2011, DHC Realty filed for Chapter 11 bankruptcy. Corey Haugland, of James & Haugland, P.C., represented DHC Realty in those proceedings.

By March 2012, David and Hilel had not repaid the $100,000 loan. At Armando's request, David and Hilel paid Armando $14,321.92, the interest accrued at that point. In April 2012, Armando took a medical leave of absence and requested repayment of the outstanding loan balance. Shortly thereafter, while Armando was still on medical leave, David and Hilel terminated Yvette and Armando's employment, and Hector "decided to . . . quit." David and Hilel still had not repaid Armando for the loan.

According to the Armendarizes, on May 10, 2012, Haugland and James & Haugland, P.C., "in conspiracy with . . . DAVID [CHOWAIKI], DHC REALTY, CHOWAIKI HOLDINGS, DHC EAST, DHC FAR EAST, DHC WEST, HILEL [CHOWAIKI], [LEON ERNEST] GLUCK, GENECO, DHC GENPAR, and DHC RALNER, with ABRAHAM [CHOWAIKI] and NADIA [NAHMAD] as accomplices," sent a letter to the Texas Workforce Commission "falsely and maliciously" accusing Armando of, *inter alia*, "theft of food and money . . . , extortion of sexual favors . . . , and verbally and financially abusing employees."

3

No. 16-50905

Thereafter, on May 23, 2012, David Chowaiki, DHC Realty, Chowaiki Holdings, DHC Far East, and DHC West brought an adversary bankruptcy proceeding against Armando, Yvette, and Hector Armendariz in the U.S. Bankruptcy Court for the Western District of Texas. David and Hilel hired Gluck, who owns Geneco, as an investigator and expert witness. In those proceedings, David and Hilel alleged that Armando had been "stealing equipment, including display cases, from [the Fuddruckers restaurants], and selling the equipment to Calderellas, a restaurant supply store" and "delivering thousands of dollars [sic] worth of food to the USO[3] without collecting any sales proceeds or allowing [them] to take a tax deduction for the donation." They likewise "accused YVETTE of removing meters from vending machines located within the EL PASO FUDDRUCKERS restaurants." David and Hilel also accused the Armendarizes of "falsifying documents" during the proceeding. Ultimately, the bankruptcy court dismissed the case on October 9, 2014, for lack of subject matter jurisdiction.

The Armendarizes brought the instant case on December 8, 2014. In their complaint, the Armendarizes allege that Appellees brought the bankruptcy case to (1) avoid repaying the outstanding loan, (2) "conceal [David and Hilel's] managerial and financial mismanagement," and (3) "extract some form of compensation from [them] through false and fraudulent claims and statements." The Armendarizes further allege that, "to build their false and fraudulent case against [them in the bankruptcy proceeding, David and Hilel] bribed former [Fuddruckers] employees . . . with jobs, or payment of back pay owed, if they agreed to testify against [the Armendarizes]" and threatened

---

[3] As the district court detailed, the Armendarizes do not explain what "USO" is, but the district court assumed it meant the "United Service Organization." Given that on appeal the Armendarizes allege misrepresentations "regarding charitable contributions," this is likely a correct assumption.

4

current employees who did not testify.  Finally, the Armendarizes allege that, "[i]n the [bankruptcy proceeding, Appellees] provided written statements, allegedly from employees of EL PASO FUDDRUCKERS, which the employees later claimed they had never before seen, and which [David and Hilel wrote]."

Appellees timely filed a motion to dismiss, but on April 6, 2015, the district court, "agree[ing] with [Appellees] that [the Armendarizes] allege portions of their RICO causes of action in a conclusory manner," ordered "[the Armendarizes] to file a RICO Case Statement that include[d] the facts upon which [they] rely to state their RICO claim(s)."  The district court, therefore, denied Appellees' motion as moot.

The Armendarizes then filed a 521-page RICO Case Statement and later an 538-page amended complaint, alleging 885 RICO "counts" and eighteen state law claims.  In their filings, the Armendarizes  assert that Appellees' (1) filings and testimony before the bankruptcy court, (2) letter to the Texas Workforce Commission, (3) "attempt[] to conceal . . . bankruptcy fraud by shifting the blame to [the Armendarizes]," (4) "public and private defamation," (5) "tortious interference with the Armendarizes' business activities," and (6) alleged siphoning of money from the Fuddruckers franchises violated all four subsections of the RICO statute.

Appellees filed a second motion to dismiss, which the district court granted.  In its order, the district court found that the Armendarizes had failed to state a plausible claim for relief under RICO, dismissing their remaining state law claims for lack of subject matter jurisdiction and declining to afford the Armendarizes an opportunity to amend their complaint.  Thereafter, Appellees filed a Rule 11 motion seeking sanctions, and the Armendarizes filed a motion for reconsideration.  The district court denied both motions.  The Armendarizes timely appealed, and Appellees timely cross-appealed the district court's denial of their Rule 11 motion.

No. 16-50905

## II.   STANDARD OF REVIEW

We review the district court's grant of a motion to dismiss de novo. *Lowrey v. Tex. A&M Univ. Sys.,* 117 F.3d 242, 246 (5th Cir. 1997).  As for a district court's denial of a motion for leave to amend a complaint, this court ordinarily reviews for an abuse of discretion.  *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).  If, however, the district court denied the motion "based solely on futility," as it did here, "we apply a de novo standard of review identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)."  *Id.* (citing *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010)).  Finally, we review a district court's decision to decline jurisdiction over pendent state-law claims and denial of a Rule 11 motion for an abuse of discretion.  *See Robertson v. Neuromedical Ctr.,* 161 F.3d 292, 296 (5th Cir. 1998) ("We will . . . reverse a district court's decision to remand pendent state law claims after dismissing all remaining federal claims only upon a finding of abuse of [the district court's] 'wide' discretion."); *Davis v. Veslan Ent.*, 765 F.2d 494, 498 (5th Cir. 1985) (citing *Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 748 (5th Cir. 1984)) ("In determining whether the district court erred in imposing [Rule 11] sanctions, this [c]ourt's review is limited to determining whether the district court abused its discretion.").

## III.   DISCUSSION

On appeal, the Armendarizes raise eleven assertions of error, which fall into three categories:  (1) the sufficiency of their RICO claim, and the district court's refusal to retain jurisdiction over their pendent state law claims; (2) the district court's declining to afford Appellants an opportunity to amend their complaint; and (3) the district court's denial of Appellants' motion for reconsideration.

No. 16-50905

## A.

After considering the parties' arguments regarding Appellees' motion to dismiss as briefed on appeal and reviewing the record, the applicable law, and the district court's well-reasoned and thorough opinion, we affirm the district court's judgment as to this issue and adopt its analysis in full.

## B.

In their cross-appeal, Appellees assert that the district court abused its discretion when it denied their Rule 11 motion for sanctions without explanation in a text order. We agree.

When a district court determines that Rule 11 sanctions are not warranted, it must provide an explanation of its denial sufficient for this court to "understand the district court's disposition." *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 484 (5th Cir. 2002). "[O]therwise, we cannot exercise meaningful review." *Schwarz v. Folloder*, 767 F.2d 125, 133 (5th Cir. 1985). "Even though we might comb the record and appellate briefs of the parties in a *de novo* effort to find support for the court's ruling, the fact remains that we require a reviewable explanation of a sanctions ruling, whether it be a grant or a denial." *Satellite Dealers Supply, Inc. v. Echostar Commc'ns Corp.*, 74 F. App'x 359, 360–61 (5th Cir. 2003).

Here, the district court denied Appellees' motion for sanctions via text order, providing no explanation for its denial. Although "[w]e do not relish prolonging secondary litigation such as this any further than necessary, [] we are simply unable to review this issue on appeal without at least a brief statement, on each point, of the reasons for denying sanctions from the perspective of the judge best positioned to expound on these matters." *Copeland*, 278 F.3d at 485. With no opinion on how this issue should come out on remand, we reverse and remand this issue to the district court for a "brief statement of reasons" justifying its denial of Appellees' motion for sanctions.

7

*See Schwarz*, 767 F.2d at 134. "In so doing, we leave to the sound discretion of the district court the determination of what further proceedings, if any, may be necessary or desirable." *Copeland*, 278 F.3d at 485.

## IV.   CONCLUSION

We AFFIRM the district court's 12(b)(6) dismissal of all claims against Appellees, and we REVERSE and REMAND the district court's denial of Appellees' motion for Rule 11 sanctions.